Your Honors, and may it please the Court, my name is Randy Fiedler, and I'm representing Appellant Frederick Dixon. I will be reserving two minutes for rebuttal. This was a close case. The defense presented substantial evidence of self-defense and manslaughter. However, the jury was given an instruction that compelled them to find malice of forethought, and as a result, they came back with a second-degree murder verdict. Mr. Dixon is entitled to relief because the incorrect jury instruction violated his right-to-do process, and this error had a substantial and injurious effect on the jury's verdict. Under the U.S. Constitution, the State must prove every element of an offense beyond a reasonable doubt. In Nevada, this includes proving that the killing was not in self-defense, and it includes proving that the killing was not under the heat of passion. However, the instruction reduced the State's burden by allowing the jury to conclude that there was malice of forethought, even when there is not. An honest but reasonable belief in the necessity of self-defense does not negate malice and does not reduce the offense from murder to manslaughter. This incorrect instruction invokes the reasonable person standard, and in so doing, forced the jury to conclude that if they found that Mr. Dixon's belief was reasonable, that that did not negate malice. So it seems to me that your main burden is with regard to the Nevada Supreme Court's ruling. So why should we not find their conclusion reasonable, or should we? Well, because the Nevada Supreme Court found that there was error in this case. Right. And so Is that a binding ruling? I mean, there's some argument here that it wasn't really error because or it wasn't error in the sense that the converse instruction would have been incorrect under Nevada law. And but the Nevada Supreme Court does say it was error. So is that a State law-binding determination here? Yes. Under Ayala v. Wong, Judge Reinhart indicated that, as here, where the State Supreme Court seemed to find error, that perhaps this Court should defer to the State court's judgment under AEDPA. And there is a way to find error other than with regard to the converse, i.e., as you're saying, it would be error because it was negating, essentially negating the manslaughter instruction more than it was negating the self-defense instruction. Correct. Have I answered your question, Your Honor? Yes. By indicating to the jury that finding that Mr. Dixon was acting reasonably, that they nonetheless would find malice, the instruction told the jury that this had to be first or second degree murder. It prevented the jury from finding self-defense, and it prevented the jury from finding voluntary manslaughter. So why don't you address the harmlessness aspect of this? I mean, as I understand what the Nevada courts concluded, they basically said, well, the altercation was over at the time that this, the fatal shooting, or the shooting occurred, and, therefore, any error in not giving verdict in the erroneous instruction is harmless. Well, the Nevada Supreme Court's conclusions failed to take into account the entire factual context of what was going on. Mr. Dixon met the victim in this case, Mr. Nunley, at one club, engaged in an altercation at that club, and then left the scene and moved on to the Palms Casino. And then at that casino, he met Mr. Nunley again, where another altercation took place, where they were swinging fists at each other, and then rocks were being thrown at Mr. Dixon. And then he goes to his car, and Mr. Nunley waved a knife at him. This entire time, Mr. Dixon is trying to de-escalate the situation, trying to calm Mr. Nunley down. And Mr. Nunley, nonetheless, escalates the situation again, raising the stakes every single time. And so when Mr. Nunley retreated to his car, Mr. Dixon had no idea what Mr. Nunley was doing, and the testimony at the trial was equivocal about how much time passed in between Mr. Nunley leaving Mr. Dixon's car and Mr. Dixon running over to Mr. Nunley's car. And so the Nevada Supreme Court's finding did not take into account any of that evidence and did not take into account that the jury could have taken that evidence very seriously. But under this instruction, the jury would have nonetheless found second-degree murder or first-degree murder. And so the Nevada Supreme Court's harmlessness analysis failed to take into account the entire factual situation, and it also failed to give proper effect to the role of the jury in our criminal justice system. Yes. The only, Chris, the difficulty with your argument is if under AEDPA deference, if we give deference, as you suggest we should, to the Nevada Supreme Court conclusion that there was trial error, what deference do we owe their conclusion that the error was harmless? Well, in some sense, we owe them no deference because this Court independently applies the Brecht standard to the Nevada Supreme Court's, to the error in this case. In another sense, deference is owed in that the Brecht standard only, we only do an analysis. More onerous to the Petitioner. More onerous to the Petitioner, correct. And so although we might consider the Nevada Supreme Court's Chapman analysis, this Court still has an independent obligation to engage in a Brecht analysis. And looking at the facts of this case. Well, you know, what's odd is the Nevada Supreme Court didn't really make a, a Chapman conclusion as such. It said the error did not substantially prejudice the jury's deliberations and verdict. Now, that may have been because it was doing a sort of plain error review? Perhaps, but. So it never did a Chapman. But it nonetheless purported to do a Chapman, although it didn't cite. It didn't purport to do a Chapman. That's what I'm saying. I don't think it purported to do a Chapman. Well, it cited to Nieder, which engaged in a Chapman analysis on a jury instructional error, and it also cited to a Nevada Supreme Court case, which also applied the Chapman standard. Yes, but what it actually concluded was, as I said, that it didn't substantially  Correct, Your Honor. Engaging in this own court's Brecht analysis, because of how equivocal the evidence was in this case, this Court should have a grave doubt about the jury's verdict. Based entirely on the jury instructions and the verdict, it's unclear whether the jury found that there was not a reasonable belief in the necessity for self-defense, and it's unclear whether the jury did not find that Mr. Dixon was acting under the heat of passion. And so trying to determine that this error was harmless is a Herculean task because we don't know what the jury did. It's your – as I understand it, there are two strays of constitutional instruction law. One is that essentially it's unconstitutionally confusing, and the other is that it's flat wrong. Which one are we at? I think we're more in the universe of it's flat wrong, because the Nevada Supreme Court conceded that the instruction in this instance was wrong and, in fact, really couldn't conclude otherwise because it was directly contrary to State law. However, under both analyses – Directly contrary to what State law? To the – to voluntary manslaughter law? Yes, and imperfect self-defense law. The instruction was supposed to indicate that Nevada is not an imperfect self-defense jurisdiction. However, in incorrectly stating the law, the instruction accidentally informed the jury that they had to find malice of forethought. Under both standards, under the unconstitutionally confusing and under the unconstitutionally incorrect standards, this Court weighs the error against the other instructions. However, in this case, that prong of the analysis is unnecessary because the Nevada Supreme Court already found that the instruction was error. And so this Court's task is to determine whether or not the error was harmless under Bracht. To what extent do you think that we should consider the statements made in the Nevada Supreme Court opinion as findings of fact? This Court should defer to the Nevada Supreme Court's findings of fact as to the fact that an error occurred. Well, that's a – that's a legal conclusion. Well, I'm talking about they do a harmless – when they do the harmless error analysis, they rely on certain facts. I mean, I'll just quote it. Eyewitnesses testified that the altercation between Dixon and Nunley was over before Dixon shot him. Nunley had put away a knife and was walking back toward his car. Dixon stepped back from the scene and the direct physical confrontation was over. The jury heard testimony that Dixon then walked deliberately back to his car, unlocked the door and grabbed a gun. Dixon ran over to Nunley's car and shot him repeatedly. To what extent, my question is, do those statements constitute findings of fact within the meaning of AEDPA? Within the meaning of AEDPA, they do not constitute findings of fact because they're – they're under the Chapman analysis and because of Frey v. Plyler and the fact that this Court is doing its own Brecht analysis, they're more like persuasive authority. Their 2254d does not dictate any sort of deference. I guess I'm asking a different question. I mean, we owe – we owe additional deference to State court findings of fact. And usually we consider those in the context of perhaps a – a finding that a – a State habeas tribunal might make as to, say, ineffective assistance. My question to you is if – I mean, if those facts, if we owe deference to those facts, then it seems to me that it is harmless error. That may be the case, but the precedent in this jurisdiction is clear that this Court essentially just does its own Brecht analysis. And if this Court wanted to defer to those findings and – and apply 2254d to it. No, we can do our own Brecht analysis. The question is what facts – to which facts do we apply Brecht? This Court would apply Brecht to all of the facts. But with the facts – there's a difference between the facts and the record, right? We have – we have a transcript, and it has some people saying A and some people saying B, and that's to what we apply the harmless error, isn't it? Correct. And so I guess combining both of your statements, the – the deference would be to the facts and the record, not just the facts that the Nevada Supreme Court included in its opinion. Well, it's not so much that they're facts. It's testimony. Unresolved testimony. Right. And that's what harmless error analysis is about. Right. Could these – this testimony have been resolved differently if the instruction were different? So it's not really about facts. It's about what's sitting there on a page, i.e., the transcript. Is that correct? And that's all the more reason to grant relief in this case, because although the Nevada Supreme Court reached its own conclusions about the facts, the facts that – the error in the Nevada Supreme Court's harmless error analysis is that the Nevada Supreme Court didn't consider the fact that the jury could have found – Well, it didn't mention a whole bunch of other facts. It mentioned the facts that are there were testified to, but there's a whole bunch of other facts. Correct. That were – or testimony. Correct. And so the jury could have found that Mr. Dixon acted honestly and reasonably, but nonetheless found malice. And the Nevada Supreme Court didn't consider that possibility and didn't give enough One last question is, does the second-degree murder conviction on its own terms make any sense? And is – to me, it doesn't make very much sense. And some evidence of the jury would have found involuntary manslaughter if it thought it could have. I mean, I don't understand how you get to second-degree murder on this record. If he had malice, he certainly premeditated. I mean, he took a – there was some substantial amount of time. He went back to the car. He got the gun. He walked over there and he shot the guy. So how could it be second-degree murder? And, Your Honor, I'm befuddled in the same way. And I think the fact that the jury's verdict is unclear and also slightly confusing under the facts of this case is more reason to grant relief. And I'd reserve my remaining time for rebuttal. Very good. Another from the State. Good morning, Your Honors. If it pleases the Court, Michael Bongard from the Attorney General's Office on behalf of the Respondent, Brian Williams, in this case. Your Honor, if – I would like to address, first of all, Judge Berzon's last question with regards to second-degree murder. I think the prosecutor in this case, running through the evidence in her closing argument, and she kind of did a backward analysis. And first of all, I think one thing that the Court has to take note of in review of this case is that, yes, there was one wrong word in this instruction. And if the word were correct in there, that an honest but unreasonable belief did not negate malice and does not reduce manslaughter – or, excuse me, murder to manslaughter, the Court took great pains – or the Nevada Supreme Court noted and the footnote in its decision, if the court – or if the jury had made this finding, that was imperfect self-defense, and that's not available in Nevada. But it was a footnote in the opinion. And the Nevada Supreme Court did say that the instruction was erroneous. Not in that sense. I took them to mean. Not for that reason, but because it was negating malice. Negating manslaughter conviction. But if you look at – and the Court also found that the jury was properly instructed on self-defense because that was the first four paragraphs of Instruction 19. But self-defense is a – is a complete defense. Correct. But that's not our question here. And I understand that. I was prefacing that. The Court also said that the jury was properly instructed on both voluntary and involuntary manslaughter. And in – in my answer brief, I noted those instructions and I noted also the statutory law with regards to that. There is nothing in those instructions that talk about malice or negation of malice being manslaughter. Right. But I think the difficulty is – I mean, you usually have the benefit of the Supreme Court's opinion saying that there was no error and we have to defer that. And now the – now it's reversed. It's pretty tough for us to say the Nevada Supreme Court was wrong, don't you think? To – to reach your position, we have to say that the Nevada Supreme Court was wrong on state law. And it's a conclusion that there was instructional error, don't we? I'm not sure I understand your question. I think – Maybe I don't understand your argument. But I think you seem to be arguing that there was really no instructional error when we consider the instructions as a whole. The Nevada Supreme Court said that there was error in that instruction, but that the error in that instruction was harmless. And again, going back to the footnote, it said, let's assume that the jury found – well, they said, okay, the instruction reads, honest but unreasonable – or honest but reasonable belief in use of force does not negate malice and does not reduce mans – second-degree murder to manslaughter. The court in the footnote said, you know, let's assume for a moment that that instruction read correctly and that the jury found that. But again, that was additionally. That was not the reason they said it was an error. It says, additionally, if the jury determined. That was not their main reason. Mm-hmm. I understand. But again, if you look at – closely at the instructions that were given in this were, I believe, 15, 16, and 17, they talk about manslaughter, voluntary manslaughter, involuntary manslaughter. And then if you look at the statutory cites in the brief, those instructions mirror what the law was on manslaughter. And the prosecutor in closing argument – But if the Nevada Supreme Court had reached that conclusion, it would have said there's no instructional error because the error claimed was covered by the instructions as a whole. I'm not – I take your point on the instructional error, but my question is, really, at this point, if we owe deference to the Nevada Supreme Court's conclusion on instructional error, I'm not sure how we'd get to your argument. The – and I guess the point I'm trying to make is that the – again, the Court noted that that word in that instruction was wrong, so that there was error in that instruction. Where, by the way, does the Nevada Supreme Court say that the manslaughter instruction was correct? I'm looking for – I'm sure it's there, but I can't find it. They said, given the totality of the instructions – and I guess I overstated my point, but the jury at – or the Nevada Supreme Court said at two points, given  the jury's instructions and the evidence admitted at trial, the error did not substantially prejudice the jury's deliberations. What the Court also said earlier in that group of paragraphs was the fact that they observed the totality of the circumstances, including the other instructions and the evidence admitted at trial, to determine if the error affected the jury's verdict. Well, look, if a jury is told A and then it's told B, they contradict each other. Okay? It's told one thing and then it's told the opposite. How can you decide that they probably believed A and not B? Looking at the facts of the case, and again, I want to get back to the prosecutor's closing argument, because I think the prosecutor correctly walked the court – walked the jury through how the evidence and the jury instruction in this case matched. They said – the prosecutor said, first of all, let's look at self-defense, and they worked their way backwards. And they said, you have to first of all determine – and we would agree with you if you find that based on the law, but if his actions were reasonable in the circumstances – and again, we're talking about an individual who's in a confrontation, the aggressor, who ends up being the victim, walks back to his car after putting away the boxcutter. But my understanding of Nevada voluntary manslaughter, although, is that there is a specific prong of it that has to do with essentially being a potential victim, right? There are two pieces of it, right? Yes. And what is the wording of the second part of it? It was sudden provocation. Right. But of a particular kind. One is an injury and the other is sufficient to excite an irresistible passion in a reasonable person or an attempt by the person killed to commit a serious personal injury on the person. Right. Okay. So as to that, that piece is directed at a species of self-defense, right? That particular subpiece. Wouldn't be directed at a species of self-defense. It would be at a particular species of action. And the prosecutor said, for instance, gave the example to the jury, let's assume that you walk in on your spouse and another person in bed. But that piece is particularly about an injury by the victim, no? That's what I thought it was. Correct. Okay. So essentially they are being told in as to that instruction that, and then there are some other instructions that do seem to have some kind of a reasonableness prong, as to the voluntary manslaughter. Right. And then they talk about no break between the reception of that and the killing. Right. And so here, but obviously it's something other than what would be a complete self-defense, because it has to have a heat of passion kind of role to it. Well, it's not a justified killing, so it. Right. Okay. So why doesn't the instruction that we're talking about essentially negate or at least terribly confuse the ability to apply that prong of voluntary manslaughter? Because the offending part of the instruction says an unreasonable or, excuse me, an honest but reasonable belief does not negate malice, and there's no malice within. Exactly. So they're saying it doesn't negate malice. It's not good enough for voluntary manslaughter. So essentially you're negating that part of the voluntary manslaughter instruction. But second-degree murder is defined as killing with malice. Voluntary manslaughter and involuntary manslaughter, there's no malice element. Correct. And they're being told that you can't negate malice, so they're backing you into second-degree murder, which is why I asked the question I asked, which is the one thing that doesn't seem to me this could logically ever be a second-degree murder, which is some evidence that the jury felt kind of, I don't know, was felt that it couldn't go to bed for. And, again, I think that second-degree murder fits in this case because of the statement the defendant made to Detective Messina when he was interviewing him. And, unfortunately, a lot of that was just played into the record, but Detective Messina testified that the defendant told him he could have walked away, but that he did not want to be viewed in a derogatory light. So, number one, that doesn't fit involuntary manslaughter because we've got that cleanup. It doesn't fit second-degree murder either because he was clearly premeditated if there was malice. And I think it fits second-degree because of the fact that he, and the words that the prosecutor used in the closing talked about he didn't want to be viewed as a homosexual, he didn't want to be viewed in a negative light by those around him. I don't think that necessarily fits. I mean, the jury could find that that all went on without premeditation. But in this case it didn't. And that was the difference that, and the prosecutors in the closing arguments explained, you know, that that walking back and forth was premeditation, but they didn't find it. But I think that the facts of the case fit that the jury found that, number one, there was, it was involuntary manslaughter, or involuntary manslaughter because, again, using the example the prosecutor gave, let's suppose he just wanted to mess up his car and that he accidentally shot him instead. I don't think from the facts we can say that there was any type of accident involved here because he fired a shot, walked to a different angle in the vehicle, fired, I believe it was either one or two more shots, walked to a different angle, tried to fire a third shot. That shot, the gun didn't fire, but he cleared it because, again, the evidence showed that there was an on-fired casing or on-fired bullet found there, and then he fired the last shot. Your Honor, the court, or the prosecutor explained why voluntary manslaughter wouldn't fit in this case, and they talked about the fact that it was over, that there was even the witnesses for the defense testified that they thought it was over. Jermaine Clay, who was closest to the victim in this case, said that it appeared that it was over. The lay witnesses, the third-party witnesses all testified it looked like everything was over because the parties separated and the victim was walking back to his car. And then you have ---- But that had happened once before at the other casino, and then it wasn't over. That's correct. But, again, that, the description there was that Mr. Dixon said ---- And there was testimony that the Nevada Supreme Court doesn't mention that they were ---- they threatened to kill him, they said something about bullets. I mean, he, I mean, the victim, threatened several times to kill him and said something about having bullets and so on. The only time that that statement, you can dodge this knife, but you can't dodge bullets, the only time that was ever uttered was by Mr. Dixon's brother, not to his statements to the police, not to the interviews of his brother for the first time. So what? So what? It was still testimony in the case that the jury could have believed. Given the rest of the testimony, I think it's fair to say that the jury disregarded it and would have disregarded it whether that instruction ---- But you can't make a homelessness determination that way. You're making a credibility determination for the jury at that point. Given the facts of the case, though, Your Honor, I think that the jury's determination that ---- and maybe the verdict was a ---- well, I don't want to say that. Given the fact that the instructions on manslaughter and ---- or, excuse me, both voluntary and involuntary manslaughter did fit the law in this case, given the fact that ---- and let's assume for a moment that the ---- I think one thing that the ---- excuse me, I lost my train of thought there for a moment. What the jury could see from this fact was that there was no independent injury significant to trigger the type of killing that would fit the definition under Nevada law of voluntary manslaughter. Because it wasn't an attempt by the person killed to commit a serious personal injury on the person killing? And then the instruction further gave that there can't be a break in time between that infliction of that event and the actual killing. It's sufficient for a reasonable person to cool down, but that there's no particular  Well, but we do have the break in time. It's not the same as self-defense, in other words. I understand. But what we have is once that waving of the knife takes place, and I see I'm over my time. That's all right. Just answer the question. What we have in this case is we've got a break in time from the time that that knife was or that box cutter was waved that the victim goes back to his car. We have the defendant who, at that point, goes back to the Escalade, grabs the gun, chambers the gun, runs 90 feet, while the testimony and the facts say everybody's yelling, don't do it, don't do it, and then fires the fatal shot. The defense theory, as I understand it, was that Dixon thought that Nunley was going for a gun, right? There was no evidence that there was a gun found. Well, except that Dixon's brother testified that Nunley said, you can dodge this knife, but you can't dodge these bullets. And there was no evidence that Dixon heard that. The only time that that, we've got a statement made by one person, not made to the police. No one else testifies to that statement. And, again, no gun found. Our questions are taking over time, but I want to make sure, Judge Nunin, do you have any questions? He may be on mute. Oh, is he there? Okay. Very good. Did you have another question? Okay. Thank you. If I could just have five seconds of silence on this. I think we have your argument in hand. Thank you. And you have 1.45 left. Your Honor, there's just one point of rebuttal. The State spent a lot of time talking about what the jury could have found and what  to speculate as to the credibility of various witnesses. This Court should be reluctant to do so. The jury could have found that this was secondary murder, but they also could have found that this was a self-defense case. They also could have found that this was manslaughter. And the point is that under these instructions, we do not know. As such, this Court should grant relief on behalf. Well, aside from the testimony of Dixon's brother, what do you have in the record that shows that Nunley was anyone perceived that Nunley was going for a gun? Aside from Mr. Dixon's brother, there was no other testimony. However, there were. And your client did not testify, right? And Mr. Dixon did not testify. However. Does that – does the case depend on whether he was going for a gun as opposed to whether he was going to – I mean, having repeatedly over some period of time both threatened and physically threatened, that he was going to continue to do that? No, Your Honor. The case does not hinge on whether Mr. Dixon heard these statements or whether the statements were true. No, or whether he was going for a gun even as opposed to going for a bigger knife or something else. Because from Mr. Dixon's perspective, at the very least, we know that Mr. Nunley escalated the situation multiple times and then went to his car. Well, we don't know Mr. Dixon's perspective because he didn't testify. Correct. I mean, what I'm trying to get at is the Nevada Supreme Court, and I don't take their statements actually as a finding, but they read the record and they conclude the altercation was over, and that's what the undisputed testimony says. And then the fatal shots were fired. What evidence do you have that would say that, look, there's a – there's some indications in the record that the altercation wasn't over? The only thing I could find was the Dixon brother testimony. Do you have anything else? I'm out of time. May I briefly respond? Yes. The pattern of escalation that occurred throughout this entire altercation, every single time that Mr. Dixon encountered Mr. Nunley, Mr. Dixon tried to de-escalate the situation and Mr. Nunley escalated it. Okay. Thank you. Very good. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Noonan, Thomas, Berzon